UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ASSOCIATES IN PERIODONTICS,    )
PLC,                           )
                               )
          Plaintiff,           )
                               )
     v.                        )     Case No. 2:20-cv-171
                               )
THE CINCINNATI INSURANCE       )
COMPANY,                       )
                               )
          Defendant.           )

## OPINION AND ORDER

Plaintiff Associates in Periodontics, PLC ("Plaintiff") brings this case as a putative class action against Defendant Cincinnati Insurance Company ("Cincinnati"), seeking insurance coverage for losses suffered during Plaintiff's COVID-19 business closure.  Pending before the Court is Cincinnati's motion to dismiss the Complaint for failure to state a claim. For the reasons set forth below, the motion to dismiss is granted.

## Factual Background

Plaintiff is a dental office located in South Burlington, Vermont.  The Complaint alleges that on or about October 1, 2017, Plaintiff purchased an "all-risk" insurance policy ("Policy") issued and underwritten by Cincinnati.  The Policy provides coverage for, among other things, "actual loss of

'business income' as well as 'extra expense' that results from
the necessary 'suspension' of your 'operations' during the
'period of restoration' due to 'loss' to Covered Property
resulting from a Covered Cause of Loss."  The Policy defines
"loss" as "accidental physical loss or accidental physical
damage."

Plaintiff claims it suffered financial losses as a result
of the closure of its office during the COVID-19 pandemic, and
that those losses are covered by the Policy.  With respect to
the Policy requirement of physical loss or damage, Plaintiff
alleges that COVID-19 is a physical substance that causes such
damage.  Specifically, the Complaint alleges that virus
particles infect and remain on certain surfaces for up to 28
days, and can be airborne for extended periods of time.  The
presence of COVID-19 thus allegedly renders physical property
unsafe, impairing its usefulness and value.

The Policy also provides "Civil Authority" coverage:
"[w]hen a Covered Cause of Loss causes damage to property other
than Covered Property at a 'premises', we will pay for the
actual loss of 'Business Income' and necessary Extra Expense you
sustain caused by action of civil authority that prohibits
access to the 'premises' . . . ."  This coverage applies only
when access to the area around the damaged property is
prohibited, and the civil authority took action in response to

2

"dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

Relevant to this case, the presence of COVID-19 caused civil authorities throughout the United States to suspend specified businesses and activities by means of closure orders. In Vermont, the Governor issued a March 13, 2020 Executive Order declaring a State of Emergency.  That Order, as amended on March 20, 2020, required suspension of elective dental care services. Because Plaintiff's periodontal practice consisted primarily of elective procedures, it was unable to operate its business for over two months.

Plaintiff's extended business closure allegedly resulted in lost business income and extra expenses.  "Business income" is defined in the Policy as net income and normal operating expenses, while "extra expense" is defined as "the necessary and reasonable expenses you incur during the 'period of restoration' that you would not have incurred if there had been no 'loss' due to a Covered Cause of Loss to Covered Property."  The Policy also covers "Extended Business Income" for loss of business income beyond the "period of restoration" under certain conditions.

The Policy provides further coverage for "Business Income From Dependent Properties."  A "dependent property" means a "property operated by other whom you depend on to . . . [d]eliver materials or services to you, or to others for your account."  Plaintiff allegedly suffered losses of income due to closures in other dental offices ("dependent properties"), as most of Plaintiff's referrals come from offices that provide general dentistry.

The Complaint notes that Cincinnati did not include a standard virus exclusion, or any other type of exclusion that would apply to the COVID-19 pandemic.

Plaintiff's losses and expenses accrued between March 19, 2020 and June 1, 2020.  Plaintiff submitted a claim for losses under the Policy, and Cincinnati declined coverage.  Plaintiff subsequently filed this lawsuit in the United States District Court for the District of New Jersey.  Cincinnati filed a motion to dismiss or transfer, and on October 28, 2020 the case was transferred to this Court.

Now before the Court is Cincinnati's motion to dismiss for failure to state a claim.  Cincinnati argues that the Policy issued to Plaintiff covers physical harm to property, as in the case of a fire or storm, and does not cover financial losses arising from a government-imposed shutdown.  Plaintiff contends that coverage is due because the COVID-19 virus caused physical

harm to its property, and that the term "physical loss" means the inability to use its premises as a dental office.  Plaintiff also argues that if the Courts finds the Policy ambiguous, it should rule in favor of coverage.

## Discussion

### I.   Motion to Dismiss Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### II. Policy Interpretation and Vermont Law

Both parties cite Vermont law for interpretation of the Policy.  In Vermont, "[a]n insurance policy is construed according to 'its terms and the evident intent of the parties as expressed in the policy language.'"  *Cincinnati Specialty Underwriters Ins. Co. v. Energy Wise Homes, Inc.*, 2015 VT 52, ¶ 16, 199 Vt. 104, 120 A.3d 1160 (quoting *Sperling v. Allstate*

*Indem. Co.*, 2007 VT 126, ¶ 8, 182 Vt. 521, 944 A.2d 210). The policy is also "to be strictly construed against the insurer." *Simpson v. State Mut. Life Assurance Co. of Am.*, 135 Vt. 554, 556, 382 A.2d 198, 199 (1977). "The insurer bears the burden of showing that an insured's claim is excluded by the policy." *Shriner v. Amica Mut. Ins. Co.*, 2017 VT 23, ¶ 6, 204 Vt. 321, 167 A.3d 326.

Vermont law further requires "terms that are ambiguous or unclear be construed broadly in favor of coverage." *Towns v. N. Sec. Ins. Co.*, 2008 VT 98, ¶ 21, 184 Vt. 322, 964 A.2d 1150. "Words or phrases in an insurance policy are ambiguous if they are fairly susceptible to more than one reasonable interpretation." *Whitney v. Vt. Mut. Ins. Co.*, 2015 VT 140, ¶ 16, 201 Vt. 29, 135 A.3d 272. "When a provision is ambiguous or may reasonably be interpreted in more than one way, then we will construe it according to the reasonable expectations of the insured, based on the policy language." *Vt. Mut. Ins. Co. v. Parsons Hill P'ship*, 2010 VT 44, ¶ 21, 188 Vt. 80, 1 A.3d 1016. However, "the fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 581, 556 A.2d 81, 85 (1988). Where the language is not ambiguous, the "expectations of an insured cannot control over the

unambiguous language of the policy." *Whitney*, 2015 VT 140, ¶ 16.

A fundamental debate in this case is whether the COVID-19 pandemic caused direct physical loss or damage as contemplated by the Policy.  The Policy does not define either "physical loss" or "physical damage."  In *City of Burlington v. Indemnity Insurance Company of North America*, 332 F.3d 38, 44 (2d Cir. 2003), the Second Circuit noted that Vermont courts had not decided how "direct physical loss or damage" should be interpreted.  The Second Circuit then considered rulings from other jurisdictions holding that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed . . . into an unsatisfactory state," and found it "extremely likely" that the Vermont Supreme Court would interpret the phrase the same way.  *City of Burlington*, 332 F.3d at 44 (citations and internal quotation marks omitted).

*City of Burlington*, though instructive, does not square precisely with the pandemic-related facts presented here.  That case involved 33 damage-causing leaks, and the court determined that there was coverage under an all-risk policy for the leaks themselves but not for defective welds that had not yet failed. *Id.*  The Second Circuit reasoned that while the actual failure of a defective part created an "unsatisfactory state" amounting

to physical loss or damage, the mere presence of a defect does
not qualify for coverage.  *Id.*  In this case, the question is
whether the presence of a virus and a related government-ordered
shutdown also creates an "unsatisfactory state" triggering
coverage.  *City of Burlington* does not answer that precise
question, and the parties have cited no Vermont case law
directly on point.

**III. COVID-related Insurance Cases from Other Jurisdictions**

        According to one source, as of March 12, 2021 over 1,400
lawsuits had been filed in state and federal courts related to
denials of insurance coverage for COVID-19 business closures.
*See* DiMugno, The Implications of COVID-19 for the Insurance
Industry and Its Customers, 42 Insurance Litigation Reporter,
No. 8, p. 186 (Thomson Reuters, March 12, 2021).  Despite
variations in policy terms from case to case, there are
significant similarities among the cases.  And while courts are
divided as to whether those policy terms can give rise to
coverage, the majority have declined to find coverage for losses
due COVID-19-related business closures.

        On the question of "physical damage" or "physical loss,"
most courts have held that the presence of the COVID-19 virus
did not cause such damage or loss to the covered property.  *See*
*id*. at 8.  For example, cases out of the United States District
Court for the District of Massachusetts recently determined that

8

the phrase "direct physical loss of or damage to" property
requires "some enduring impact to the actual integrity of the
property at issue.  In other words, the phrase 'direct physical
loss of or damage to' does not encompass transient phenomena of
no lasting effect . . . ."  *SAS Int'l, Ltd. v. Gen. Star Indem.
Co.*, No. CV 20-11864-RGS, 2021 WL 664043, at *2 (D. Mass. Feb.
19, 2021); *see also Select Hosp., LLC v. Strathmore Ins. Co.*,
No. CV 20-11414-NMG, 2021 WL 1293407, at *3 (D. Mass. Apr. 7,
2021).  In *Select Hospital*, the court reasoned that "the COVID-
19 virus does not impact the structural integrity of property .
. . and thus cannot constitute 'direct physical loss of or
damage to' property.  A virus is incapable of damaging physical
structures because 'the virus harms human beings, not
property.'"  2021 WL 1293407, at *3 (quoting *Wellness Eatery La
Jolla LLC v. Hanover Ins. Grp.*, No. 20cv1277, 2021 WL 389215, at
*7 (S.D. Cal. Feb. 3, 2021)).

The United States District Court for the Northern District
of Illinois reached this same conclusion with respect to the
closure of a dental office.

> The critical policy language here — "direct physical
> loss" — unambiguously requires some form of actual,
> physical damage to the insured premises to trigger
> coverage.  The words "direct" and "physical," which
> modify the word "loss," ordinarily connote actual,
> demonstrable harm of some form to the premises itself,
> rather than forced closure of the premises for reasons
> extraneous to the premises themselves, or adverse
> business consequences that flow from such closure.

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020), *reconsideration denied*, No. 20 CV 2160, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021).  Other federal courts have agreed.  *See, e.g., Uncork & Create LLC v. Cincinnati Ins. Co.*, 2020 WL 6436948, at *13-14 (S.D. W. Va. Nov. 2, 2020) ("[E]ven actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property . . . the pandemic impacts human health and human behavior, not physical structures."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5847570, at *1 (S.D. Cal. Oct. 1, 2020) ("[T]he presence of the virus itself . . . do[es] not constitute direct physical loss[] of or damage to property.").

Cases favoring the minority position often cite *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020) or *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867 (W.D. Mo. 2020).  In *Studio 417*, the court denied an insurer's motion to dismiss because plaintiff beauty salons and restaurants alleged that COVID-19 "attached to and deprived [p]laintiffs of their property, making it unsafe and unusable, resulting in direct physical loss to the premises and property." 478 F. Supp. 3d at 800-03 (internal quotation marks and citation omitted).  In *Blue Springs*, the same court again found that the

COVID-19 virus physically attached itself to the premises, causing physical damage or loss to the property.  488 F. Supp. 3d at 874.  Most courts have viewed those cases as outliers. See *Select Hosp.*, 2021 WL 1293407, at *3; *SAS Int'l, Ltd,* 2021 WL 664043, at *5 ("Other courts have either tiptoed around [the *Studio* 417] holding, criticized it, or treated it as the minority position."); *Cafe Plaza de Mesilla Inc. v. Cont'l Cas. Co.*, No. 2:20-CV-354-KWR-KRS, 2021 WL 601880, at *6 (D.N.M. Feb. 16, 2021) (opining that "*Blue Springs Dental Care, LLC*, represents an outlier case").

Courts have also considered civil authority coverage, with the majority again ruling in favor of insurers.  Such cases generally hold that although a civil authority order mandated a business closure, the insured must still show that the order was related to physical damage.  As discussed in *Sandy Point Dental*,

> the policy's civil authority coverage applies only if there is a Covered Cause of Loss, meaning a direct physical loss, to property other than the plaintiff's property.  Even then, there is coverage only if the civil authority order, (1) prohibits access to the premises due to (2) direct physical loss to property, other than plaintiff's premises, caused by or resulting from any Covered Cause of Loss.

488 F. Supp. 3d at 693; *see also Rye Ridge Corp., et al. v. The Cincinnati Ins. Co.*, No. 20 CIV. 7132 (LGS), 2021 WL 1600475, at *3 (S.D.N.Y. Apr. 23, 2021) ("The Complaint alleges the same loss for other properties as it does for the insured properties

-- that the presence of COVID-19 caused loss and/or damage.
Because . . . the Complaint does not allege physical loss or
physical damage, the Complaint fails to state a claim for Civil
Authority coverage.").

Although some plaintiffs have argued for coverage in the
absence of a pandemic-related exclusion, those claims have been
largely unsuccessful.  *See, e.g., Rye Ridge Corp*, 2021 WL
1600475, at *3 ("Plaintiffs' argument that there is no virus
exclusion in the Policies is irrelevant because the Complaint
does not meet its initial burden of pleading that the Policies
apply."); *SAS Int'l, Ltd.,* 2021 WL 664043, at *2.

## IV.  Coverage Under the Cincinnati Policy

In this case, as in most cases across the country, the
Policy provides coverage only in the event of physical damage or
loss.  That requirement determines coverage even in the event of
a government closure order.  Accordingly, Plaintiff must
plausibly allege that the presence of the COVID-19 virus, and/or
the related Executive Order by the Governor, caused actual
physical damage or loss.  Like most courts that have reviewed
similar pleadings and related policies, the Court finds
Plaintiff's factual allegations fail to set forth a plausible
claim for coverage.

The Court begins with the basic tenet of Vermont law that
insurance policies must be interpreted consistent with the

12

intent of the parties.  *See Sperling*, 2007 VT 126, ¶ 8.  Here,
the Policy requires "accidental physical loss or accidental
physical damage."  That phrase is unambiguous, as it plainly
requires a "physical" loss, as opposed to "detrimental economic
impact unaccompanied by a distinct, demonstrable, physical
alteration of the property."  10A Couch on Ins. § 148:46; *see
also Kim-Chee LLC & Yup Cagi Inc. d/b/a Master Gorino's Pil-Sung
Tae-Kwon-Do v. Philadelphia Indemnity Ins. Co.,* No. 1:20-CV-
1136, 2021 WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021) ("*Kim-Chee
LLC*") ("The phrase 'direct physical loss or damage' is
unambiguous.  It requires physical damage to the insured
properly itself as a condition for coverage."); *cf. City of
Burlington*, 332 F.3d at 44 (predicting Vermont law would require
moving the property from a "satisfactory state" to an
"unsatisfactory state").  Accordingly, the Court finds the
parties intended the Policy to cover actual, physical damage or
loss.

The Complaint alleges injury in the form of a virus that
disappears naturally after a relatively short period of time.
The temporary nature of the harm, with no discernable impact on
the covered property, is significant.

> Virus particles may have circulated in the air within
> the insured premises and settled on the exposed
> surfaces.  These particles multiply within a host such
> as a human being, but they do not last long on their
> own in the atmosphere.  They are invisible.  They do

> not alter the characteristics of the covered property
> in any way except that their presence creates a health
> risk for humans who enter the premises.  The building
> itself remains unharmed by the [virus] and would be
> safe for occupancy except for the arrival of people
> who bring new sources of infection.

*Kim-Chee LLC,* 2021 WL 1600831, at *4.

Plaintiff contends that even the temporary presence of the virus rendered its property "unsatisfactory," but offers no controlling law to support its position.  Courts within this Circuit, largely following New York law, have held that such a temporary harm does not constitute physical damage or loss. *See, e.g., id.* ("According to Plaintiffs' briefing, the virus dies after four days on a surface.  It presents a mortal hazard to humans, but little or none to buildings which remain intact and available for use once the human occupants no longer present a health risk to one another."); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.,* No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711, at *4 (E.D.N.Y. Mar. 22, 2021) ("The presence of the virus at Plaintiff's premises would thus have been short-lived, and it could not constitute 'physical damage to property' under the plain language of the Policy."). Other courts have concluded that contamination by a virus "does not constitute a 'direct physical loss' because the virus's presence can be eliminated by 'routine cleaning and disinfecting,' and 'an item or structure that merely needs to be

cleaned has not suffered' a direct physical loss." *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3418 (JGK), 2021 WL 860345, at *5 (S.D.N.Y. Mar. 6, 2021) (quoting *Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V, 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020)); *cf. In Mama Jo's, Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020), *cert. denied*, 2021 WL 1163753 (Mar. 29, 2021) (holding that dust from road construction did not qualify as a direct physical loss because the property merely needed cleaning).

The lack of visible harm to the property is not necessarily determinative.  Indeed, courts have held that the presence of contaminants on a property, rendering that property unusable, may constitute a direct physical loss.  *See, e.g., See Sentinel Mgmt. Co. v. New Hampshire Ins. Co.,* 563 N.W. 2d 296 (Minn. 1997) (asbestos fibers)*; Widder v. La. Citizens Prop. Ins. Corp.*, 82 So. 3d 294 (La. Ct. App. 2011) (presence of lead in a home)*.  This case, however, concerns an invisible virus that is present throughout the world.  *See Kim-Chee LLC*, 2021 WL 1600831, at *6 ("the claim is one of contamination . . . which affects all structures and, indeed, all places in the world").  It is that general presence, and not a specific physical harm to covered properties, that has caused governments at all levels to consider restrictions.  The question, therefore, is one of "widespread economic loss due to restrictions on human

15

activities, not the consequence of a direct physical loss or damage to the insured premises." *Id.*

The Complaint alleges that COVID-19 presents a danger to people. The virus can be transmitted through the air or by means of contact with infected surfaces. The only danger arises when humans come into contact with the virus, and Plaintiff concedes that such danger is short-lived. The Court now joins the majority of courts throughout the country in concluding that the COVID-19 pandemic did not cause physical damage or loss to covered property as defined in the Policy. The virus posed a threat to people, while ultimately leaving the property and its environment unscathed. *See id.*

Plaintiff argues that the "physical loss" requirement can be satisfied if there is a loss of use. This argument, too, is unavailing. "The reason this argument fails repeatedly is because . . . there is nothing 'direct' or 'physical' with Plaintiff seeking to recover economic losses for periods of reduced operations." *Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, No. 20-23245-CIV, 2021 WL 1540907, at *9 (S.D. Fla. Apr. 16, 2021). Indeed, the critical flaw in Plaintiff's position is the lack of physical harm to the property. As explained in one recent decision, "the key difference between the Plaintiff's loss of use theory and something clearly covered -- like a hurricane -- is that the property did not change. The

16

world around it did.  And for the property to be useable again,
no repair or change can be made to the property -- the world
must change." *Town Kitchen LLC v. Certain Underwriters at
Lloyd's, London*, 2021 WL 768273, at *5 (S.D. Fla. Feb. 26,
2021).

Because it cannot satisfy the requirement for physical
damage or loss, Plaintiff's arguments under the Business Income,
Extra Expense, Dependent Property, and Civil Authority
provisions each fall short.  The Business Income and Extra
Expense coverages expand the types of losses that may be
covered, but are triggered only by physical loss or damage.  For
the reasons discussed previously, no such loss or damage
occurred.  *See, e.g., Kim-Chee LLC*, 2021 WL 1600831, at *7
("Both provisions may increase the types of payments for which
the insurer is responsible.  They do not change the requirement
found throughout the first-party coverage portion of the Policy
that the loss result from direct physical loss or damage to the
insured property.").  This conclusion is buttressed by the
limitation of coverage, linked to both Business Income and Extra
Expense, to a "Period of Restoration."  That "Period" ends when
the property is (or should be, with reasonable speed and similar
quality) repaired, rebuilt or replaced, or when the business
resumes at a new location.  In this case, there is nothing to
repair, rebuild or replace, and relocation was unnecessary.  *See*

17

*id.* ("The repair or replace reference contemplates an actual, concrete, change in property."); *Newman Myers Kreines Gross, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) (explaining that "repair" and "replace" in a period of restoration clause "contemplate physical damage to the insured premises as opposed to loss of use of it").  The Complaint implicitly concedes that the virus disappeared on its own when people stopped entering the property.

The Dependent Property provision pertains to properties other than those owned by the insured, and requires physical loss or damage.  Because the COVID-19 pandemic did not result in such loss or damage, Plaintiff cannot recover under that provision.

Plaintiff's arguments regarding civil authority coverage fail as well.  As noted above, the Policy's civil authority coverage applies only if there is physical damage or loss to property other than the Plaintiff's property.  In such a case, coverage applies if the civil authority prohibits access to the covered premises.  Once again, because there was no physical damage or loss under Vermont law, civil authority coverage does not apply.  Furthermore, although Plaintiff contends that the Governor's Executive Order barred it from using the subject property, nothing in the Complaint suggests that physical entry -- as opposed to use of the property for dentistry -- was

prohibited.  *See Sandy Point Dental*, 488 F. Supp. 3d at 693-94;
*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp.
3d 937, 945 (S.D. Cal. 2020) ("the civil authority coverage
provision only provides coverage to the extent that access to
Plaintiff's physical premises is prohibited, and not if
Plaintiffs are simply prohibited from operating their
business"); *cf. Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL
129229, at *2 (N.D. Cal. Mar. 21, 1995) (noting that although
riot-related curfew prevented customers from being outside, it
did not prohibit access to the insured's premises).

     Finally, Plaintiff argues that because it carried an "all
risk" policy, its Policy covers harms that are not specifically
excluded.  Plaintiff also notes that Cincinnati declined to
include a virus exclusion, despite national insurance industry
templates for such an exclusion.  As the Second Circuit has made
clear, "[i]t has long been recognized that 'all-risk' does not
mean all-loss."  *City of Burlington*, 332 F.3d at 47.  Rather
than covering all non-excluded loss, "'all-risk' means any risk
of the type for which the Policy provides coverage."  *Kim-Chee
LLC*, 2021 WL 1600831, at *3.  As discussed, the Complaint in
this case does not plausibly allege facts giving rise to
coverage.

     The lack of a virus exclusion does not change that result.
Had Cincinnati included a standard virus exclusion, its argument

against coverage would have been straightforward.  The lack of such an exclusion, however, does not expand the coverage available under the Policy.  *See id.* at *8 ("omitting [a standard] exclusion does not increase the available coverage").  Because there is no coverage under the unambiguous language of the Policy, the lack of a virus exclusion is irrelevant.  *See Rye Ridge Corp.*, 2021 WL 1600475, at *3 (concluding that the lack of a virus exclusion is "irrelevant" because plaintiff failed to state a plausible coverage claim); *Bel Air Auto Auction, Inc v. Great Northern Ins. Co.*, No. CV RDB-20-2892, 2021 WL 1400891, at *10 (D. Md. Apr. 14, 2021) ("Omission of an exclusion does not alter the plain language of the provisions under which the Plaintiff seeks coverage, and such provisions simply do not provide coverage for a loss of use unrelated to physical, structural, tangible damage to property.").  Accordingly, Cincinnati is entitled to dismissal of Plaintiff's claims.

## Conclusion

Plaintiff seeks insurance coverage for financial losses suffered during the COVID-19 pandemic.  A prerequisite for coverage, however, is physical damage or loss.  Because the virus did not cause such damage or loss to Plaintiff's property, there can be no coverage.  Cincinnati's motion to dismiss the

Complaint (ECF No. 21) is therefore granted.  All other pending motions (ECF Nos. 50, 54, 63) are denied as moot.


     DATED at Burlington, in the District of Vermont, this 17th day of May, 2021.


                         /s/ William K. Sessions III
                         William K. Sessions III
                         U.S. District Court Judge